UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MANUEL HOWE,

                  Plaintiff,

                     **MEMORANDUM & ORDER**

      - against -                  04 Civ. 0656 (DRH) (ETB)

TOWN OF HEMPSTEAD; TOWN OF
HEMPSTEAD DEPARTMENT OF GENERAL
SERVICES; TOM DAUSCHER, in his official
and individual capacity; LOUIS ESPOSITO,
in his official and individual capacity; and
AMATO BIANCULLI in his individual and
official capacity,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**APPEARANCES :**

**LAW OFFICES OF FREDERICK K. BREWINGTON**
Attorneys for Plaintiff
50 Clinton Street, Suite 501
Hempstead, NY 11550
By: Frederick K. Brewington, Esq.

**HEMPSTEAD TOWN ATTORNEY**
Attorney for Defendants Town of Hempstead and Town of Hempstead Department of General
Services
One Washington Street
Hempstead, NY 11550
By: Susan P. Jacobs, Esq., & Joseph J. Ra, Esq.

**RYAN, BRENNAN, & DONNELLY LLP**
Attorneys for Defendants Tom Dauscher, Louis Esposito, and Amato Biancaniello
131 Tulip Avenue
Floral Park, NY 11001
By: John E. Ryan Esq., & John M. Donnelly, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff Manuel Howe ("Plaintiff") brought the present action against Defendants Town

of Hempstead andTown of Hempstead Department of General Services (hereinafter, jointly

"Town Defendants"); and Defendants Tom Dauscher ("Dauscher"), in his official and individual capacity; Louis Esposito ("Esposito") in his official and individual capacity; and Amato Biancaniello[1] ("Biancaniello") in his individual and official capacity (hereinafter collectively "Individual Defendants") for violations of 42 U.S.C. § 1981 for disparate treatment and failure to promote (*see* Compl. ¶¶ 88-92); 42 U.S.C. § 1983 for failure to promote (*see* Compl. ¶¶ 93-97); 42 U.S.C. § 1983 for "Fourteenth Amendment and Conspiracy" (*see* Compl. ¶¶ 98-111); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e for employment discrimination (*see* Compl. ¶¶ 117-120); the New York State Human Rights Law ("NYSHRL") § 296 (*see* Compl. ¶¶ 112-116); 42 U.S.C. § 1986 for conspiracy (*see* Compl. ¶¶ 121-123); and New York Civil Rights Law ("NYCRL") § 40-c for employment discrimination (*see* Compl. ¶¶ 124-126). Plaintiff seeks $7,000,000 in compensatory damages, punitive damages, and attorney's fees. Town Defendants and Individual Defendants moved separately for summary judgment. Plaintiff opposes each motion. For the reasons set forth herein, the Town Defendants' motion for summary judgment is GRANTED in part and DENIED in part and the Individual Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

The following facts are drawn from the parties' Local 56.1 statements, and the parties' submissions. The facts are undisputed unless otherwise noted.

Plaintiff is an African-American employee of the Town of Hempstead, Department of General Services. The Town of Hempstead is a New York municipality. The Town of Hempstead Department of General Services is a municipal division of the Town of Hempstead.

---

[1]Plaintiff mistakenly refers to Mr. Biancaniello as "Bianculli."

Defendant Dauscher is the Deputy Commissioner of the Department of General Services. Defendant Esposito is a supervisor within the Department of General Services. Defendant Biancaniello is also a supervisor within the Department of General Services. Neither Esposito, Biancaniello or Dauscher has the authority to hire, fire or promote Howe. According to the testimony, there is no set procedure in the Town for the progression of titles. *See* Daushcer Dep. at p. 40. Dauscher, as Deputy Commissioner, can recommend promotions through Personnel Action Requests which are sent to Human Resources. Human Resources then undertakes to determine whether money exists for the promotion, the needs of the particular department and whether the individual is qualified for the position. Enright Dep. at pp 21 to 40.

Plaintiff was initially hired as a summer employee in June 1989. In September 1989, he left the position to return to high school. After his high school graduation, Plaintiff recommenced his employment with the Town on July 2, 1990 again as a "seasonable/part-time employee." Plaintiff occupied the same, part-time position from July 2, 1990, until November 1, 1994. At that time, he was given full-time status, as a Laborer I, Grade 9, in the maintenance department. Plaintiff retains the title of Laborer I today.

According to the Job Description, the duties of a Laborer I include: performing manual labor tasks, such as loading and unloading trucks; landscaping, such as mowing lawns, spreading fertilizer and pruning shrubs; sweeping; digging ditches; performing unskilled construction work; erecting signs, posts, and fences; and assisting carpenters, plumbers, masons, painters, and other maintenance trades-people. These activities are "illustrative only." The qualifications for Laborer I are the ability to learn the care and use of standard tools and equipment used on the job;

the ability to understand and follow oral and written instructions; good health and physical strength to perform heavy manual tasks; and the ability to read, write, and understand English. The duties of a Groundskeeper I[2] involve supervising work necessary to the care and maintenance of public parks and recreational facilities according to the submitted Job Description. Illustrative activities include participating in grounds keeping activities, maintaining athletic fields and play areas, and removing dirt, rubbish, snow, leaves, and other refuse from public grounds, walks, and parking areas. Qualifications of Groundskeeper I include working knowledge of equipment used in the care and maintenance of parks and recreational facilities, working knowledge of the care of lawns and shrubs, the ability to operate and make routine repairs to grounds- keeping equipment, the ability to make reports and keep records and two years of paid experience in the care and maintenance of large public or private grounds.

During the first years of his employment, Plaintiff was assigned to assist Perry Vacchio, a groundskeeper for the Department of General Services. Plaintiff asserts that Vacchio often referred to him in racially derogatory terms. (Pl.'s Decl. ¶ 51.) Plaintiff asserts that these derogatory names were used by co-workers thereafter, in the presence of Defendants Esposito and Biancaniello, who "did nothing to stop or redress such racist remarks." (*Id.* ¶ 52.) No specifics are provided as to who made the remarks and when the remarks were made. Moreover, Plaintiff does not assert that these names were ever used by his superiors. In 1992, Vacchio retired.

In 1993, Daryn Miller was hired as a Laborer I. Miller, who is Caucasian, had prior landscaping experience before entering the position. Like Plaintiff, he was initially hired as a

---

[2] The motion papers do not contain a Job Description for Laborer II.

part-time employee, but was promoted to full-time status "only two years after his initial hire." (Pl.'s 56.1 Counterstatement ¶ 7.)  Miller and Plaintiff have worked side-by-side ever since.

Since being given full-time status in November 1994, Plaintiff has often requested the title and position of Groundskeeper.   On four occasions (1996, 1997, 2000 and 2004), Dauscher made recommendations that Plaintiff be promoted to either Laborer II or Groundskeeper I. (Individual Defendants' 56.1 Statement para.s 21 to 23).   Plaintiff never received the position. The Town does not maintain records as to why the recommendation was not approved. Enright Dep. at p. 38.   It is uncontroverted that Plaintiff has no formal experience in grounds-keeping, other than his exposure while working with Vacchio.

Plaintiff's frustration grew (blossoming into the present lawsuit) because he saw many new employees being promoted within their respective departments.  He refers to two employees who were promoted "from Laborer I to Laborer II, Groundskeeper I, and Groundskeeper II positions, within shorter time spans than the Plaintiff's employment."  (Pl.'s 56.1 Counterstatement ¶ 42.)  These employees are Perry Vacchio and Ron Insignia..

Vacchio began his employment with the Town in 1969 as a Laborer.  In 1974, after five years, he was promoted to Laborer II.  In 1980 he was promoted to Groundskeeper I, and in 1984 he was promoted to Groundskeeper II.  There has been no evidence submitted regarding his educational background or experience.

Insignia was hired as a Laborer I in 1989.  He worked on the Town's cemeteries, rather than in  the maintenance department.[3]  He was promoted to Laborer II in 1995, Laborer Foreman

---

[3]Buildings and Grounds and Cemeteries are two of the divisions within the Department of General Services. *See* Town's 56.1 Statement at para. 1.

the following year, Labor Crew Chief in 2000, and Groundskeeper II in 2001.    There has been

no evidence submitted regarding his educational background or experience.[4]  Defendants merely

submit that this "individual has worked through the necessary progression or titles to reach the

title he currently holds."  MacLeod Aff. at para. 11.

Plaintiff also references Michael Brussel, Hussein Moussa, Dennis McDonald, Ara

Keshishian, Mariano Polito, and Ralph Lane as employees who were promoted within their

respective fields, but who had less seniority than Plaintiff.  It is uncontroverted, however, that

Brussel was a maintenance mechanic, Moussa was a plumber, McDonald was a mechanic,

Keshishian was a mechanic, Polito was a carpenter crew chief, and Lane was a mechanic.  It is

also uncontroverted that each of these referenced employees, unlike Plaintiff, had educational

and professional experience in their fields prior to joining the Town.

Dauscher did in fact recommend Plaintiff for a promotion on a number of occassions.

(*See* Individual Defs.'s 56.1 Statement ¶¶ 21-23.)[5]  That being said, Plaintiff insists that Dauscher

made these recommendations "on only several occassions," and that Dauscher did not "exercise[]

his authority . . . to in any way enforce or follow-up on said request for promotion."  (Pl.'s 56.1

Counterstatement at ¶ 20; *see also* Pl.'s 56.1 Counterstatement at ¶ 63 ("Defendant DAUSCHER

fails to explain why, during Plaintiff's fifteen years of employment with the Defendant TOWN,

---

[4]In their brief, the Town Defendants argue that Insignia's experience and education
distinguish him from Plaintiff.  *See* Town's Mem. At p. 11.  However, their 56.1 statement does
not include such any such facts.  Moreover, while the MacLeod affidavit addresses the
experience and education of other individuals, it does not provide any information regarding
Insignia's education or experience.

[5]No contemporaneous personnel records documenting why the recommendation was not
followed have been submitted.

DAUSCHER only put in for Plaintiff's promotion in 1996, 1997, 2000, and 2004.").) Similarly, though Plaintiff admits that Esposito made recommendations for "salary increases and/or promotions" for four employees, including Plaintiff and Miller (*see* Individual Defs.' 56.1 Statement ¶ 18), Plaintiff denies that Esposito made any recommendations for promotions for Plaintiff. (*See* Pl.'s 56.1 Counterstatement at ¶ 18.) However, at his deposition Plaintiff conceded that Esposito did not have the ability to affect the terms and conditions of his employment and did not take affirmative steps to prevent him from being promoted. In fact, apart from Esposito telling him to do something and Plaintiff telling him when its completed, Esposito did not perform any supervisory functions over Plaintiff. Howe Dep. at 87, 88 & 94. As for Biancaniello, Plaintiff constantly refers to him as one of Plaintiff's supervisors, but never references any specific conduct by Biancaniello.

On March 25, 2003, Plaintiff filed a charge of discrimination with the EEOC. On September 30, 2003 the EEOC issued a finding of probable cause. On February 17, 2004, Plaintiff filed suit in federal court. Defendants now move for summary judgment. Plaintiff opposes their motions.

*STANDARD*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the

non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

The Second Circuit has "noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 603 (2d Cir. 2006). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*DISCUSSION*

Plaintiff has asserted claims pursuant to § 1981 for disparate treatment and failure to promote; § 1983 for failure to promote; 42 U.S.C. § 1983 for "Fourteenth Amendment and Conspiracy"; Title VII for employment discrimination; NYSHRL § 296; § 1986 for conspiracy; and NYCRL § 40-c for employment discrimination. The Title VII, § 1981, NYSHRL § 296, and NYCRL § 40-c all undergo essentially the same analysis, and will be considered together. The § 1983 claims and the § 1986 claim will be considered separately thereafter.

I.       *Section 1981, Title VII, NYSHRL § 296, and NYCRL § 40-c*

Defendants move for summary judgment as to Counts I, IV, V and VII, on the ground that

Plaintiff has failed to make out a *prima facie* case of discrimination.  Plaintiff opposes the motion,

though the reasons for his opposition are sometimes difficult to trace.

Though these counts bring causes of action pursuant to four different statutes – two federal

and two state – the analysis is essentially the same for each, as the parties acknowledge.  *See*

*Patterson*, 375 F.3d at 225 ("Most of the core substantive standards that apply to claims of

discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in

employment in violation of § 1981 . . . ."); *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d

Cir. 2001) (applying burden-shifting rules of Title VII to discrimination claims, including claims

under New York City and State law); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir.

2000) ("Our consideration of claims brought under the state and city human rights laws parallels

the analysis used in Title VII claims."); *Taitt v. Chem. Bank*, 849 F.2d 775, 777 (2d Cir. 1988)

(noting that elements of claim for retaliatory discharge under § 1981 are the same as required

under Title VII); *Reid v. Niagara Mohawk Power Corp.*, No. 01 Civ. 1026, 2006 WL 273020, at

*5 (N.D.N.Y. Jan. 31, 2006) (applying *McDonnell-Douglas* analysis to § 1981 claim for failure to

promote, the court noted that "[t]he standards that apply to claims of discrimination in violation of

Title VII are also applicable to claims of discrimination in employment under § 1981");

*Erhunmwunse v. Edison Parking Corp.*, 301 F. Supp. 2d 278, 282 (S.D.N.Y. 2004) (asserting that

Title VII and § 1981 claims analyzed identically); *Bass v. NYNEX*, No. 02 Civ. 5171 (DLC), 2004

WL 1941088, at *5 (S.D.N.Y. Sept. 1, 2004) (same).[6]  Thus, in determining the motion for

summary judgment regarding these claims, the Court will apply the tripartite *McDonnell Douglas*

analysis in determining Counts I, IV, V and VI.

A.  *The Prima Facie Case*

    In order to establish a *prima facie* case of race discrimination for failure to promote,

Plaintiff must show (1) he is a member of a protected class; (2) he "applied and was qualified for

a job for which the employer was seeking applicants"; (3) he "suffered an adverse employment

action"; and (4) " the circumstances surrounding the action permit an inference of discrimination."

*Williams v. R.H. Donnelly Corp.,* 368 F.3d 123, 126 (2d Cir. 2004);  *Petrosino v. Bell Atlantic*,

385 F.3d 210, 226 (2d Cir. 2004).  *Cf. Cruz v. Coach Stores, Inc*., 202 F.3d 560, 567 (2d Cir.

2000).  Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant, who

must then offer a legitimate, non-discriminatory rationale for his or her actions.  *Terry v. Ashcroft*,

336 F.3d 128, 138 (2d Cir. 2003).  Once the defendant offers such a rationale, "to defeat summary

judgment . . . the plaintiff's admissible evidence must show circumstances that would be

sufficient to permit a rational finder of fact to infer that the defendant's employment decision was

more likely than not based in whole or in part on discrimination." *Id*. (citation and internal

quotation marks omitted).  Under this analysis Plaintiff bears the initial burden of establishing a

*prima facie* case of discrimination.  *Id.*

    The parties do not dispute that Plaintiff was a member of a protected class, but Defendants

dispute the subsequent three factors.  Defendants contend that Plaintiff was not qualified for the

_____

[6]One distinction, however, is that in certain cases a Title VII violation may be established
even where a defendant's conduct was negligent, while under § 1981, a plaintiff must show that
the discrimination was intentional.  *See Patterson*, 375 F.3d at 226.

-11-

position to which he claims he should have been promoted and he did not apply for the promotion. Finally, Defendants contend that the circumstances do not permit an inference of discrimination.

There exist questions of fact with respect to whether Plaintiff was qualified for the promotion. Plaintiff has submitted evidence that he has performed many of the typical duties of a Groundskeeper. Defendants contend that these duties are those of a Laborer and do not qualify Plaintiff for the position of Groundskeeper. However, two (Caucasian) employees, Vacchio and Insigna, progressed from Laborer I to Laborer II to Groundskeeper and Defendants have failed to explain this anomoly. Nor does Plaintiff's lack of experience maintaining athletic fields or placing markings on a ballfields necessarily render him unqualified as the job description merely refers to such duties as illustrative and such skills are not included as a qualification.

Defendants' argument that Plaintiff never applied for the position similarly fails. Sufficient evidence has been submitted to raise a question of fact as to whether plaintiff applied for the position. Plaintiff repeatedly requested a promotion from Dauscher and Dauscher, in fact, made several such recommendations. Although a specific application for a promotion is generally required, *Petrosino,* 385 F.3d at 227, the rule is not inflexible. The facts of a case may make a specific application unnecessary. *Id.* One situation where an employee is excused from the specific application requirement is when the employee applies for a position through informal procedures endorsed by the employer. *Id. See also Brown v. Coach Stores, Inc.,* 163 F.3d at 706, 710 n. 2 (2d Cir. 1998). Moreover, "if an employee expresses to the employer an interest in promotion to a particular class of positions, that general expression of interest may satisfy the requirement that the employee apply for the position." *Williams,* 368 F.3d at 129. Here,

Dauscher testified that there is "no set thing in writing for promotions." Dauscher Dep. at 40.

Similarly, the Assistant Director of Human Resources testified that there is no set process or

person who makes the decision if someone is going to be promoted. Sometimes the application is

filled out after the promotion is approved. It "varies with the circumstances, the individual, the

title and the money." Enright Dep. at 42-43. Plaintiff did, in fact, express an interest in

promotion to Dauscher. *See, e.g.,* Ex. J to Individual Defendants' 56.1 Statement. Given the lack

of formality and fluidity of the promotion process, a trier of fact could conclude that Plaintiff did

apply for the position.

The third factor has also been met. There is no dispute that plaintiff suffered an adverse

employment action, *i.e.,* he was not promoted. *Cf. Demoret v. Zegarelli*, 451 F.3d 140, 151-52

(2d Cir. 2006) (allegations regarding pay, lack of promotion, and removal of supervisory

responsibilities form sufficient showings of adverse employment actions).

Regarding the fourth factor, the Court must determine whether the proferred evidence

shows circumstances that would be sufficient to permit a rational fact-finder to infer a

discriminatory motive. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997). To

create this inference, Plaintiff offers: (1) the use of racially derogatory comments by his co-

workers; and (2) the fact that similarly-situated employees were promoted.

Plaintiff asserts the "former Groundskeeper Dennis Vacchio . . . called me 'a little

monkey' and a 'monkey fuck' during the early 1990's." (Pl.'s Decl. ¶ 51.) Plaintiff asserts that

these derogatory names were used by co-workers thereafter, in the presence of Defendants

Esposito and Biancaniello, who "did nothing to stop or redress such racist remarks." (*Id.* ¶ 52.)

Plaintiff does not assert, however, that these names were ever used by his superiors. Nor does

Plaintiff provide any specifics as to the "thereafter", i.e. who these co-workers were and when they made these remarks.

Racist comments may constitute evidence of an intent to discriminate, but only if a sufficient nexus exists between the comments and the adverse employment action. *See Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004). This connection exists if the comments were made by the decision-maker or by someone who had great influence over the decision-maker. *Compare Rose v. N.Y. City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (finding that age-related comments were direct evidence of discriminatory animus because they were made by a supervisor with "enormous influence in the decision-making process"), *and Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 162-63 (2d Cir. 1998) (citing *Ostrowski v. Atlantic Mutual Ins. Co.*, 968 F.2d 171, 182 (2d Cir. 1992)) (stating that discriminatory comments were made by supervisors, not regular employees with no say in the termination decision, so they do show discriminatory animus), *with Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 309 (S.D.N.Y. 2000) (finding that it was "fatal" to plaintiffs' case that they only alleged discriminatory statements by co-workers, not anyone involved in the decisions to terminate their employment).

If no such nexus exists, the comments are merely "stray remarks" which do not lead to an inference of discrimination. *See Schreiber*, 324 F. Supp. 2d at 518-19. The following four factors are to be considered when determining whether racist comments are indicative of an intent to discriminate or are just non-probative "stray remarks": 1) who made the remarks; 2) when the remarks were made in relation to the relevant employment decision; 3) the content of the remarks; and 4) the remarks' context, such as whether they had any relation to the relevant employment

decision.  *Id.* at 519 (denying defendant's motion for summary judgment when age-based comments were made by high-level employees just months before plaintiff's termination).

The comments do not create an inference of discrimination in this case.  The comments alleged by Vacchio were made prior to 1993.  As to the other claimed comments, Plaintiff does not specify who made the comments, when the comments took place, their context, or whether they had any relation to the decision not to promote Plaintiff.  Therefore, Plaintiff has not shown these racist remarks to be anything more than stray remarks and they do not create an inference of discrimination.

A plaintiff may also show that the circumstances surrounding the adverse employment action give rise to an inference of race discrimination by demonstrating that "similarly situated employees of a different race were treated more favorably."  *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999).   "Whether two employees are similarly situated ordinarily presents a question of fact for the jury."  *Graham v. Long Island Railroad,* 230 F.3d 34, 39 (2d Cir. 2000).  "To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare [himself] to must be similarly situated in all material respects."  *Shumway v. United Parcel Serv.*, 118 F.3d 60, 64 (2d Cir. 1997) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th  Cir. 1992)).  In order to satisfy *Shumway's* "all material respects" standard a plaintiff must show "co-employees were subject to the same performance evaluation and discipline standards."  *Graham,* 230 F.3d at 40.

Defendants contend that Plaintiff has failed to establish that any similarly-situated employees received favorable treatment.  Plaintiff has referred to a number of Caucasian employees who received promotions.  Defendants' articulation of those employees' employment

histories and training establishes that those employees occupied entirely different positions, *e.g.*, mechanics, plumbers, carpenters, and had experience in their respective areas prior to their employment with the Town. Plaintiff's assertion (*see* Pl.'s 56.1 Counterstatement ¶ 40) that he does not have enough information to confirm or deny the Town Defendants' assertions of fact does not create an issue of fact as discovery has been conducted and Plaintiff either knows or should know whether to admit or deny these allegations. *See Stepheny v. Brooklyn Hebrew School for Special Children*, 356 F. Supp. 2d 248, 255 (E.D.N.Y. 2005) ("Parties are . . . prohibited from attempting to raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of 'knowledge and information' because discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny them."). Ultimately, what is undisputed is that none of these employees were laborers. Therefore, they were not similarly situated for the purposes of this decision.

Plaintiff also points to Insigna and Vacchio who both started as Laborer I, and were eventually promoted to Groundskeeper. Insigna and Vacchio, who are both white, were allowed to work through the necessary progression of titles from Laborer to Groundskeeper but Plaintiff was not. There is no evidence of any educational or experience differences. Insignia and Vacchio appear to present "a reasonably close resemblance of fact and circumstances" to Plaintiff to raise a question of fact for the jury as to whether they and the Plaintiff are similarly situated.

Plaintiff also points to Daryn Miller as similarly situated. Miller was initially hired as a seasonal employee in June of 1993 and was granted permanent status as a laborer "only two years after his initial hire." (Pl.'s 56.1 Counterstatement ¶ 7.) Plaintiff was granted permanent status in November 1994, four years after his initial hire. Plaintiff cites as favorable treatment the fact that

Plaintiff was a seasonal-laborer for four years before receiving permanent employment whereas

Miller was a seasonable employee for only two years prior to his promotion. However, that fact

appears to be irrelevant to Plaintiff's claim that he was not promoted from Laborer I.[7]

Finally, "[a] showing that similarly situated employees belonging to a different racial group

received more favorable treatment can also serve as evidence that the employer's proffered

---

[7]To the extent Plaintiff is seeking to recover based on his allegation that he was the victim of discrimination because he worked four years as a part-time employee without benefits before being appointed to full-time while white workers were hired "off the street" as full-time employees with benefits the claim must be dismissed as untimely. Before filing a complaint in federal court, a Title VII claimant must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC and receiving a "right to sue" letter. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999). In New York, a claimant must file the charge within 300 days of the alleged unlawful act. *See id.* at 327-28; *see also Stuevecke v. N.Y. Hosp. Med. Ctr. of Queens*, 2003 WL 22019073, at *3 (E.D.N.Y. Aug. 26, 2003) (citing 42 U.S.C. § 2000e-5(e)(1)). The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).

The 300-day limitation period generally begins to run when the plaintiff knows or should know of the occurrence of the alleged discriminatory act. *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992). That is, the time bar is based on when discriminatory acts happen, not when their effects are felt. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). The Supreme Court has made it clear that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Discrete discriminatory acts" include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114 (emphasis added). Thus a Title VII claim regarding Plaintiff remaining a part-time employee until 1994 is time barred as having occurred more than 300 days prior to March 25, 2003, the date he filed his EEOC complaint.

Section 296 of the New York State Human Rights Law, N.Y. Exec. Law § 296, 42 U.S.C. § 1981 and New York Civil Rights Law § 40-c allow three years from the date of injury caused by discrimination. *See Wilson v. Fairchild Republic Co.,* 143 F.3d 733, 738 n.5 (2d Cir. 1998); N.Y. CPLR 214. Accordingly, any claims regarding the failure to make plaintiff full-time are untimely under these laws as the events occurred more than three years prior to February 17, 2004, the date on which the complaint in this action was filed.

legitimate, non-discriminatory reason for adverse job action was a pretext for racial discrimination." *Graham*, 230 F.3d at 43 (citations omitted).

Overall, sufficient questions of fact exist to permit a trier of fact to infer that the decision not to promote the Plaintiff was more likely than not based on discrimination.

*B. Liability of the Individual Defendants.*

The Individual Defendants contend that the record is insufficient to support liability on their part. The Court agrees.

Although not raised by the Individual Defendants, the Court notes that, as a matter of law, "individual defendants are not subject to liability under Title VII." *Patterson*, 375 F.3d at 221 (citations omitted). Accordingly, summary judgment must be granted in favor of the Individual Defendants on the Title VII claim.

With respect to the 1981, N.Y. Human Rights and N.Y. Civil Rights claims, the record is insufficient to sustain liability of the Individual Defendants. In order to make a claim for individual liability under § 1981, there must be personal involvement. *Patterson*, 375 F.3d at 229. Personal involvement requires a demonstration of "some affirmative link to causally connect the actor with the discriminatory action." *Id.* (citing *Whidbee v. Garzarelli Food Scpeialities, Inc.,* 223 F.3d 62, 75 (2d Cir. 2000)).

The record demonstrates an absence of personal involvement by both Esposito and Biancaniello. During his deposition, Biancaniello testified that he was not in any position to recommend any employees for promotions or increases in salary. (*See* Biancaniello Dep. at 15.) Plaintiff has not provided any evidence that Biancaniello was in any position to act in a manner that affected the terms of Plaintiff's employment and, in fact, admits that  Biancanello did not have

the ability to affect the terms of his employment, including promotions, and did not take any affirmative steps to prevent him from being promoted. Howe Dep at 87 & 96. Similarly, Plaintiff testified that Esposito did not have the ability to affect the terms and conditions of his employment and did not take affirmative steps to prevent him from being promoted. In fact, apart from Esposito telling him to do something and Plaintiff telling him when its completed, Esposito did not perform any supervisory functions over Plaintiff. *Id*. at 87, 88 & 94. During his deposition, Esposito testified that it's not his job as a supervisor to make recommendations. Esposito Dep. at 45. Based on the record, there can be no question of fact that Esposito and Biancanello had no personal involvement in any denial of promotion to the Plaintiff. Accordingly, summary judgment is granted in their favor on the Section 1981 claim.

With respect to Dauscher, the evidence is undisputed that he recommended Plaintiff for a promotion four times and that his role is limited solely to making recommendations. He was not the final decisionmaker as to whether a promotion was granted. While Plaintiff may believe that Dauscher should have recommended him more often, it cannot be inferred on this record that Dauscher engaged in intentional discrimination[8] in not promoting Plaintiff. His role was limited to making recommendations and a § 1981 claim requires a showing that the alleged discrimination was intentional. *Patterson*, 375 F.2d at 226. Accordingly, summary judgment is granted in favor of Dauscher on the § 1981 claim.

Summary judgment must also be granted in favor of the Individual Defendants on Plaintiff's claim under the New York Executive Law and the New York Civil Rights Law.

---

[8] Plaintiff does not claim, and there is no evidence to show, that Dauscher recommended other similarly situated individuals for a promotion more often than he recommended the Plaintiff.

Individual liability under that law "is limited to and includes only supervisors, who themselves, have the authority to "hire and fire employees." *Gentile v. Town of Huntington,* 288 F. Supp. 2d 316, 321 (E.D.N.Y. 2003) (citing *Tomka v. Seiler Corp.*, 66 F.2d 1295 (2d Cir. 1995). None of these Individual Defendants has the power to grant Plaintiff a promotion and Plaintiff concedes that they took no affirmative steps to prevent him from being promoted. Additionally, an individual must have personal involvement in the discriminatory behavior to be held liable under these statutes. *Long v. Marubeni America Corp.,* 406 F. Supp. 285, 300 (S.D.N.Y. 2005). As set forth above, the requisite personal involvement is lacking here.

In sum, with respect to Counts I, IV, V and VII, the Town Defendants' motion for summary judgment is denied and the motion of the Individual Defendants is granted.

II.     *42 U.S.C. § 1983: Municipal Violations and 42 U.S.C. § 1983 for "Fourteenth Amendment and Conspiracy"*

In Count II, captioned "Municipal Violations," Plaintiff alleges that the Town Defendants "have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiff of rights, privileges and immunities secured by the Constitution." (Compl. ¶ 94.) Allegedly, "[t]hese actions were condoned, adopted and fostered by policy makers including but not limited to Defendants DAUSCHER, ESPOSITO, and BIANCULLI." (*Id.*) Count III, captioned "Fourteenth Amendment and Conspiracy" offers more detail than Count II, but it appears that the substance of the claim is the same. Count III alleges that "[t]he Defendants, collectively and each one of them individually, have engaged in actions and abuses which violate and deny Plaintiff his rights as provided under the Fourteenth Amendment . . . ." (Compl. ¶ 99.)

As a preliminary matter, both Counts II and III fail as against the Town Defendants. In order to bring a § 1983 claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Plaintiff has failed to offer any evidence of a policy or custom. The only allegation of such a policy is found in his 56.1 Counterstatement, wherein Plaintiff asserts that the Town Defendants have a "pattern, practice and history of failing to redress a number of race-discrimination suits against it." (Pl.'s 56.1 Counterstatement ¶ 69.) However, the mere fact that other African-American individuals have filed suits against the Town does not establish a policy or practice. *See Ostroski v. Town of Southold*, No. 99-CV-2648(JFB), 2006 WL 2053761, at *14 (E.D.N.Y. July 21, 2006) ("[T]he mere fact that a number of lawsuits have been filed, without any information as to whether the suits are meritorious or spurious, or alternatively, any evidence that the municipality ignored such complaints such that it constituted deliberate indifference to any potential problem of excessive force, does not assist a fact-finder in determining whether the Town of Southold actually has a historical problem of its police officers using unconstitutionally excessive force in the performance of their duties."). Therefore, even construing the admissible evidence in the light most favorable to Plaintiff, Counts II and III fail as a matter of law against the Town Defendants. *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (noting that "the mere invocation of the 'pattern' or 'plan' will not suffice") (citations omitted).

-21-

Count II also alleges that the Individual Defendants "condoned, adopted and fostered" the policy of discrimination. (Compl. ¶ 94.) As discussed, however, there is not a scintilla of evidence that such a policy ever existed. Therefore, Count II is also dismissed as against the Individual Defendants.

The Court now turns to the remaining § 1983 claim: Count III as it applies to the Individual Defendants. Section 1983 provides, in relevant part:

> Every person who, under color [of law] . . . subjects, or causes to be subjected,
> any citizen of the United States . . . to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. This statute furnishes a cause of action for the violation of federal rights created by the Constitution. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Therefore, a § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) *as a result of the defendant's actions*, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Eagleston v. Guido*, 41 F.3d 865, 872 (2d Cir.1994) (emphasis added).

As to the first factor, the Court must determine whether the Individual Defendants acted under color of state law. As supervisors, there can be no question that the Individual Defendants "are, in their personal capacities, amenable to suit under this statute, inasmuch as they were conducting themselves as supervisors for a public employer and thus were acting under color of state law." *Annis v. County of Westchester, N.Y.*, 36 F.3d 251, 254 (2d Cir. 1994). As a result, Count III satisfies the first factor as against the Individual Defendants.

However, merely holding a position of responsibility is insufficient to impose liability under § 1983. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted). A defendant in a § 1983 action may not be held liable unless there is a showing of personal involvement, *i.e.*, direct participation or failure to remedy the alleged wrong after learning of it or creation of a policy or custom under which unconstitutional practices occurred. *Id.* As discussed *supra, there is* no evidence of personnel involvement as to the Individual Defendants. Accordingly, they are entitled to summary judgment in their favor.[9]

In sum, Counts II and III fail against the Town Defendants because Plaintiff has failed to demonstrate any policy or custom that deprived him of a federal constitutional right. Those same Counts fail against the Individual Defendants.

VI.    *42 U.S.C. § 1986*

It is well-established that a violation of § 1986 is predicated on a violation of § 1985, as the former provides a remedy for the violation of the latter. *See, e.g., Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated on a valid

---

[9]The Court would note that Plaintiff's due process claim also fails as a matter of law. To prevail on a procedural due process claim under the Fifth and Fourteenth Amendments, a plaintiff must demonstrate that he was deprived of a protected property or liberty interest. *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). In order to have a property interest that is subject to due process protection, a plaintiff "must have more than a unilateral expectation of it. [The plaintiff] must, instead, have a legitimate claim of entitlement." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Irwin v. City of New York*, 902 F. Supp. 442, 447 (S.D.N.Y. 1995).

It is well-established that a civil servant seeking a promotion "does not possess any mandated right to appointment or any other legally protectable interest." *Cassidy v. Municipal Civ. Serv. Commission*, 37 N.Y.2d 526, 529 (1975); *Andriola v. Ortiz*, 82 N.Y.2d 320, 324 (1993); *see also McMenemy v. City of Rochester*, 241 F.3d 279, 286 (2d Cir. 2001).

§ 1985 claim . . . .").  Plaintiff admits that a § 1985 claim is a prerequisite and that there is no §

1985 claim in the Complaint, but suggests that he has implicitly plead a § 1985 by pleading all of its

elements, albeit under different headings.  (*See* Pl.'s Opp'n Mem. at 35.)  Such may be the case, and

the federal system only requires notice pleadings (*see* Rule 8), but "notice pleadings" are a far cry

from "implicit pleadings."

　　　　Because Plaintiff has not plead a violation of § 1985, he cannot succeed on a § 1986 claim.

Moreover, as Defendants point out, a claim under §1986 must be brought within one year after the

cause of action accrued.  42 U.S.C. § 1986.  Accordingly, any claim for events occurring prior to

February 17, 2003 is untimely.   Defendants' motion to dismiss Count VI is granted.


*CONCLUSION*

　　　　In sum, the Town Defendants' motions for summary judgment is GRANTED in part and

DENIED in part.  The motion of the Individual Defendants' is GRANTED in its entirety.


**SO ORDERED.**

Dated: Central Islip, N.Y.　　　　　　　　　　　　/s/
　　　　October 30, 2006　　　　　　　　　　　　Denis R. Hurley
　　　　　　　　　　　　　　　　　　　　　　　United States Senior District Judge